## JACKSON, guardian, *v.* BENNETT.

1. An agent who procures for another a loan of money, the agent in this transaction not representing the lender, is not, upon the trial of an action brought by the lender upon a promissory note given for the money borrowed, incompetent to testify in behalf of the plaintiff as to transactions· between the witness as such agent, and the borrower, relating to the procurement of the loan, at or before the time when the same was granted, although the latter· may have become insane, and although the agent, after the maturity of the note, was by the lender employed as an attorney for its collection.

2. An attorney at law employed to collect a promissory note and who has no contract with his client as to what fees will be charged, but expects to look to the client for reasonable compensation, is not interested in the case so as to disqualify him from testifying as a witness for the plaintiff. This is true although the witness may have testified that he had no other fee reserved except the ten per cent. in the note sued upon. Taken altogether, the facts were not such as to disqualify him, it really appearing that his fee was in no way dependent upon the result of the case.

January 13. 1896.

Complaint on notes.   Before Judge Van Epps.   City court of Atlanta.   July term, 1895.

On May 1, 1891, John B. Jackson made application to Samuel Barnett for a loan of $600, which Barnett obtained through the Georgia Loan & Trust Company; and notes therefor were made by Jackson, due in 1896, with a deed, under sections 1969-71 of the code, to secure the same, to the Security Investment Company of Bridgeport, Conn. A year afterwards Jackson applied to Barnett for a further loan and obtained the same, the former notes being paid and cancelled from the money thus obtained, and Jackson making two notes, one for $600 and one for $500, dated May 1, 1892, and due five years later, payable to said Security Investment Co., together with a deed to secure them, as before mentioned. The notes stipulated for the payment of ten per cent. attorney's fees if placed in the hands of an

attorney for collection; and for the payment of interest annually, with the provision that in default of the payment of interest when due, the principal might become due in the discretion of the holder. On June 13, 1893, suit was brought on the notes, it being alleged that default had been made in the payment of three interest coupons. The suit was by C. B. Bennett to whom the notes and deeds had been assigned. On May 28, 1894, a plea was filed by H. B. Jackson, alleging as follows: He is a son of the defendant, who is an imbecile and mentally incapacitated to attend to any business; and a commission for the appointment of a guardian for his person and property was issued by the ordinary on the same day that this plea was filed, returnable June 9, 1894; in view of which facts H. B. Jackson prays to be appointed guardian *ad litem* for the purpose of defending this suit. He further pleads that at the time John B. Jackson signed and delivered the notes and deed in question, he was an imbecile and mentally incapable of making a contract or of knowing his rights, or in any way being able to protect himself in a contract, or of managing and controlling his own affairs; that at the time of making the contract he was of notoriously unsound mind, and plaintiff knew or ought to have known his condition, and could have known of the same by the exercise of ordinary care and prudence; and that the money for which the notes were given was not received by John B. Jackson or his family, but was obtained (if at all) by the manipulations and under the direction of Solomon Peak and other parties unknown to this defendant, John B. Jackson being at the time mentally incapable of making a contract, and being in the hands and under the influence and control of said Peak and others unknown. Wherefore neither said Jackson nor his estate is liable for the payment of said debt or any part of it, the same having been procured from him while in a state of imbecility and while being unable to understand, comprehend and protect his rights. On December 17, 1894, an amend-

ment to the plea was made, making Martha Jackson, the duly and legally appointed guardian of John B. Jackson, a party defendant. At the trial the plaintiff introduced in evidence the notes and deeds previously mentioned, and the testimony of Samuel Barnett and other witnesses. Defendant also introduced witnesses; but no testimony except of Barnett is brought to this court. The jury found for the plaintiff. Defendant's motion for a new trial was over-ruled, and she excepted. The grounds of the motion are, that the verdict is contrary to law and evidence, and that the court erred in allowing Barnett to testify in manner stated, over objection that he was interested in the result of the suit, and at the time of the conversations he testified about he was acting for the plaintiff, and was therefore incompetent as a witness, Jackson being insane and defended by his guardian. It appears from Barnett's testimony, that he was engaged in the business of taking applications for loans of money and procuring the same from various lenders; that he forwarded this application and it was accepted, and he had nothing more to do with the matter (except to forward interest payments for the borrower's accommodation) until this suit was brought, and Barnett was employed by plaintiff as attorney to collect the debt; that he has no fee reserved except the ten per cent. in the notes, has no express contract as to what fees will be charged, but expects to look to plaintiff for reasonable compensation; and that he is not interested in the result of the case, except as an attorney trying to discharge his duty. The papers were not prepared by him, but by the loan company, and returned by it to him for Jackson to execute. Barnett's testimony further tends to show that Jackson was of sound mind and understanding at the times he applied for the loans, and when he executed the papers.

*John B. Hutcheson* and *Hugh M. Dorsey,* for plaintiff in error. *Broyles & Son,* contra.

ATKINSON, Justice.

The official report states the facts necessary to an understanding of the questions made.

1. Objection was made to the competency of Samuel Barnett, who was offered as a witness by the plaintiff in the present case; it being contended that he was disqualified upon the twofold ground: (1) Because of his agency for the lender (the plaintiff in the present case) in effecting the loan out of which the litigation arose, the borrower, the defendant, being insane. (2) Because of interest in the result of the suit, the party against whom it was offered being at the time insane.

The witness was competent unless the statute provided the contrary. The statutory provision relied on to exclude him as a witness, upon the ground of disqualification urged in the objection just stated, is as follows: "No agent or attorney at law of the surviving or sane party at the time of the transaction testified about, shall be allowed to testify in favor of surviving or sane party under circumstances where the principal, a party to the cause, could not testify; nor can a surviving party or agent testify in his own favor, or in favor of a surviving or sane party, as to transactions or communications with a deceased or insane agent, under circumstances where such witness would be incompetent if deceased agent had been principal." See Acts 1893, p. 54, par. (e).

It will be seen by reference to the record, that the witness Barnett, at the time the facts came to his knowledge concerning which he was called to testify, was not the agent of the lender, but in that transaction was the agent of the borrower. The borrower had become insane. The statute prohibits one who is the attorney at law or agent of the surviving or sane party at the time of the transaction testified about, from becoming a witness against the adverse party, but inasmuch as the witness objected to was not the agent of the "surviving or sane party," he does not fall within the class of persons who are disqualified by the statute.

The second clause of the same paragraph of the act above quoted disqualifies a surviving party or agent from testifying in his own favor, or in favor of a surviving or sane party, as to transactions or communications with a deceased or insane agent. The testimony offered was not as to communications or transactions with a deceased or insane agent, but was as to transactions and communications between a principal since become insane and his own agent; and clearly such transactions and communications do not fall within the prohibition of the statute. The statute above quoted represents the last expression of the legislative will upon the subject of disqualification upon the ground stated. The first attempt of the General Assembly to define the circumstances under which the agent or attorney at law of a surviving or sane party would be competent as a witness against the adverse party, was made in 1889. See Acts of 1889, p. 86, par. (e). This provision was modified by the act of 1890-91, p. 107, and this in turn was modified by the act from which we quote as above. None of these provisions would have supported the objection made to the witness offered in this case, because none of them profess to deal with the agent of an insane party when offered as a witness touching transactions between himself and his insane principal, by the adversary of such principal.

2. Was the witness disqualified by reason of his interest in the result of the litigation? He was the attorney at law representing the lender. The contract sued upon stipulated for the payment of ten per cent., in addition to principal and interest, for attorney's fees in the event of enforced collection. Did the attorney, under the arrangement between himself and his client, have an interest in the judgment separate from that of his client? To whom did the money primarily belong in the event of its collection? If the fee of the attorney was contingent upon collection, or its payment dependent upon his realizing upon the stipulation for the payment of attorney's fees, he would have such an

interest in the thing sued for as would disqualify him as though he were a party. If the fee, however, was not dependent upon what he might recover, but the service was rendered subject to adjustment between himself and his client and independently of what he might recover, then the contrary would be true. In looking through the record, we do not find such evidence as would disqualify the witness. It is true that in response to a question by the presiding judge: "Have you any other fee reserved except ten per cent. in these notes?" the witness answered: "No." This answer, unexplained, might authorize an implication that he had reserved the ten per cent. stipulated to be paid as his fee, but when he further explained: "Well, I am under no express contract with the parties as to what fee shall be charged. I am the attorney of record, and prosecuting this case for the person who loaned the money. . . It is true I have no interest in the result of the case. I have no contract whatever with the parties about the fee I shall charge them. I expect to look to them for my reasonable compensation. I am not interested in any of these coupons," the explanation removed the apparent interest in the recovery. Suppose he had recovered a judgment, for whose use would it have been recovered? In whom would have been the legal title to the recovery? Undoubtedly in the client— held subject, it is true, to the lien of the attorney for his reasonable compensation. If, however, there had been an assignment to him of the stipulation for attorney's fees, while the judgment when recovered would have been in the name of the client, it would nevertheless have been in part for his use. He would have had an equity in the thing itself, and not merely a statutory lien upon it to secure his fee. In the one case he would have been a party having an interest in the thing sued for. In the other he would not. In the one case he would have been disqualified. In the other he would not. Inasmuch as the witness Barnett was an attorney at law and representing the plaintiff on whose

behalf he was called, and in the negotiation of the loan represented the borrower whose guardian was the defendant in this case, we think it proper to call attention to that other provision of our law which provides that an attorney at law shall neither be competent nor compellable to testify for or against his client as to matters coming to his knowledge by reason of the relationship of attorney and client, actual or prospective; and to say that the reason why the witness should not have been excluded under it was because, in the transaction between himself and the borrower, he acted in the capacity of an ordinary agent or broker to negotiate a loan, a relation which involves none of the delicate confidences which attend upon that of attorney and client, which latter are, upon considerations of public policy, privileged as against even voluntary disclosure by a faithless attorney. The mere fact that one is an attorney at law does not prevent his representing another as an ordinary agent. If the trust reposed be one belonging to that class which pertains peculiarly to the relation of attorney and client, the communications between the two are privileged; but if the act to be performed is such as might have been as well performed by any other person, and involves none of the trusts and confidences peculiar to that relation, the right of disclosure is not prohibited by law. We conclude therefore that the witness was competent, and the court did not err in admitting his testimony.        *Judgment affirmed.*